**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed April 9, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00943-CV

---

### JON T. NEUBAUM AND BARBARA NEUBAUM, Appellants

### V.

### BRENTON M. STANFIELD, THOMAS P. STONE, STONE & ASSOCIATES, LLP, & JIMMY VAN KNIGHTON, II, Appellees

---

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Court Cause No. 12-04-03663-CV**

---

## D I S S E N T I N G   O P I N I O N

The majority holds that by failing to submit expert testimony on causation, the Stone Parties did not conclusively negate the causation element of the Neubaums' legal malpractice claim. Because causation in this case is within a jury's common understanding and the record conclusively demonstrates that judicial error, a new and independent cause, caused the Neubaums' alleged harm, I

would affirm the summary judgment. Accordingly, I dissent.

This case presents two issues. The first is whether judicial error can operate as a new and independent cause in a legal malpractice suit. The second is whether an attorney-defendant claiming judicial error as a means to negate the causation element must present expert testimony when the judicial error is apparent on the face of the record.[1]

As grounds for its traditional summary judgment, the Stone Parties asserted that, as a matter of law, their allegedly actionable conduct did not proximately cause any damage to the Neubaums, and that the Stone Parties cannot be held liable for an error committed by the trial court in the Usury Lawsuit. Essentially, the Stone Parties contend that the trial court's error in the Usury Lawsuit was a new and independent cause of the Neubaums' alleged harm.

A new and independent cause is not an affirmative defense but a component of the proximate cause issue. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009); *see also* Comm. on Pattern Jury Charges, State Bar of Tex., *Tex. Pattern Jury Charges: General Negligence & Intentional Torts* PJC 3.1 (2012). "A new and independent cause of an occurrence is the act or

---

[1] Even if expert testimony were required in this case, the Neubaums waived the deficiency by failing to expressly object to the lack of expert testimony in their written answer to the Stone Parties' motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be *expressly presented* by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence." (emphasis added)); *see* Tex. R. Civ. P. 166a(c). Additionally, despite the fact that neither party raised the lack-of-expert-testimony issue below or on appeal, the majority has reversed the summary judgment after determining on its own motion that expert testimony is required. However, courts of appeals cannot on their own motion raise grounds to reverse a summary judgment that were not briefed or argued in the appeal. *Wells Fargo Bank, N.A. v. Murphy*, — S.W.3d —, No. 13-0236, 2015 WL 500636, at *2 (Tex. Feb. 6, 2015) (citing *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209 (Tex. 1990)). In essence, by failing to raise the issue in the trial court and on appeal, the Neubaums have conceded that expert testimony was not required. It is not this court's duty to make the Neubaums' arguments for them.

omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question." *Hawley*, 284 S.W.3d at 856. "A new and independent cause alters the natural sequence of events, produces results that would not otherwise have occurred, is an act or omission not brought into operation by the original wrongful act of the defendant, and operates entirely independently of the defendant's allegedly negligent act or omission." *Id.* at 857.

There is no binding Texas precedent directly addressing the question of whether judicial error constitutes a new and independent cause in the legal malpractice context.[2] Cases from other jurisdictions, however, indicate that a judicial error can be a new and independent cause as long as the attorney preserved the error by making the necessary legal arguments and the attorney's negligence did not contribute to the judicial error such that the judicial error could have been reasonably anticipated. *See Crestwood Cove Apts. Bus. Trust v. Turner*, 164 P.3d 1247, 1255-56 (Utah 2007); *Huang v. Brenson*, 7 N.E.3d 729, 737 (Ill. Ct. App. 2014); *see Lombardo v. Huysentruyt*, 110 Cal. Rptr. 2d 691, 702 (Cal. Ct. App. 2001); *Simko v. Blake*, 506 N.W.2d 258, 260 (Mich. Ct. App. 1993), *aff'd*, 532 N.W.2d 842 (Mich. 1995). These courts reason that a lawyer should not be subject to liability every time a judge erroneously rules against the lawyer's client. *Turner*,

---

[2] The idea of a judicial-error "defense" is not completely foreign in Texas. In *Vitale v. Keim*, No. 01-95-00401-CV, 1997 WL 549186 (Tex. App.—Houston [1st Dist.] Aug. 29, 1997, pet. denied) (not designated for publication), the First Court of Appeals considered the issue of whether judicial error was the sole proximate cause of a plaintiff's harm. The defendant-attorneys argued that a bankruptcy judge misapplied the Bankruptcy Code and that the bankruptcy judge's decision would have been corrected on appeal. The court first assumed that Texas courts would recognize the "sole cause defense of judicial error" in a malpractice suit. But because Fifth Circuit opinions on the issue indicated that the law was not settled, the court concluded that the bankruptcy judge's decision would not necessarily have been reversed. Therefore, the defendant-attorneys did not conclusively prove that judicial error was the proximate cause of the plaintiff's harm. *Id.* at *6–*8. Here, in contrast, a court of appeals actually did reverse the trial court on the issue raised by the defendant law firm.

164 P.3d at 1256. Otherwise, lawyers would become guarantors of correct judicial decision-making and would be forced to burden an already overburdened legal system with inordinate quantities of additional motions and evidence that, in most cases, will prove superfluous. *Id.*; *Simko v. Blake*, 532 N.W.2d 842, 847 (Mich. 1995).

Here, the relevant evidence is undisputed. The Stone Parties represented the Neubaums, the defendants in the Usury Lawsuit. The Stone Parties objected to the sufficiency of the evidence regarding an issue on which the plaintiff in the Usury Lawsuit bore the burden of proof—i.e., the existence of an agency relationship between the Neubaums and Buddy March, one of the Neubaums' business associates. The trial court overruled the objection. The Stone Parties lodged the same objection in a motion for new trial. The trial court overruled the objection again. A court of appeals reversed the trial court on the same issue raised at trial by the Stone Parties. *Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 920 (Tex. App.—Beaumont 2009, pet. denied).

Nothing in the record indicates that the Stone Parties' negligence contributed to the judicial error such that the error was foreseeable. The alleged acts of negligence committed by the Stone Parties were not related to and did not contribute to the trial court's error in the Usury Lawsuit. For example, the Stone Parties' alleged failure to submit the usury-cure letter into evidence was unrelated to the issue of whether March was the Neubaums' agent. The Stone Parties' alleged failure to conduct discovery in a timely manner was also unrelated to the issue of whether March was the Neubaums' agent. None of the negligent acts alleged to have been committed by appellees bears any relationship to the question of whether March was the Neubaums' agent. Moreover, the plaintiffs in the Usury Lawsuit had the burden of proving the agency relationship. The Neubaums (and

4

the Stone Parties) were not required to present any evidence negating agency at trial; they had only to challenge the sufficiency of the evidence adduced by the Usury Lawsuit plaintiffs. They did so. The facts of this case are therefore distinguishable from the facts of cases rejecting judicial-error arguments on the basis that the attorney-defendant's negligence contributed to the judicial error. *Cf. Skinner v. Stone, Raskin & Israel*, 724 F.2d 264, 266 (2d Cir. 1983) (acknowledging that judicial error can be a new and independent cause but holding that defendant-attorneys and the trial judge were equally at fault in overlooking notice requirements); *Woods v. Hill*, 273 P.3d 354, 360 (Or. Ct. App. 2012) (rejecting judicial-error argument when defendant-attorney's negligence created the confusion regarding the method by which plaintiff properly could seek to remedy his dissatisfaction with an arbitration award); *Lombardo*, 110 Cal. Rptr. 2d at 702 (acknowledging that judicial error can be a new and independent cause but holding that any judicial error was attributable to the defendant-attorney's failure to seek court approval for a trust amendment); *Temple Hoyne Buell Found. v. Holland & Hart*, 851 P.2d 192, 198–99 (Co. Ct. App. 1992) (rejecting judicial-error argument because defendant-attorneys could have protected their clients against rule-against-perpetuities dispute by considering the rule, recognizing the potential for dispute, and writing a savings clause or excluding the disputed clause).

Under the undisputed facts of this case, I would hold as a matter of law that judicial error was a new and independent cause destroying the causal connection between the negligence allegedly committed by the Stone Parties and the harm allegedly suffered by the Neubaums. *See Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex. 1968) (holding as a matter of law based on undisputed evidence that plaintiff's injuries were caused by an independent and intervening agency).

Turning to the second issue, the Stone Parties did not have to present expert testimony on causation. Expert testimony is not required when causation is within the jury's common understanding. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004). Expert testimony is generally required in matters concerning the attorney's exercise of judgment. Such matters may include which witnesses to call, what testimony to obtain, or when to cross-examine. *Id.* The wisdom and consequences of these tactical choices are generally beyond the ken of most jurors. *Id.* Additionally, expert testimony is usually required when the underlying litigation encompasses complex legal concepts or medical malpractice. *See, e.g.*, *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 849–50 (Tex. App.—Dallas 2013, no pet.) (expert testimony is required in legal malpractice suit when proving the underlying medical malpractice case would require expert testimony); *F.W. Indus., Inc. v. McKeehan*, 198 S.W.3d 217, 221 (Tex. App.—Eastland 2005, no pet.) (expert testimony is required in legal malpractice suit when the underlying case involves the effect of a bankruptcy filing on the malpractice plaintiff's claims).

Some cases, however, do not require expert testimony. For instance, expert testimony on causation is not required when the attorney allows the statute of limitations to run on a client's claim. *James V. Mazuca & Assocs. v. Schumann*, 82 S.W.3d 90, 97 (Tex. App.—San Antonio 2002, pet. denied) (en banc). This is because the attorney's error is "readily apparent from the face of the record." *E.g.*, *Bagan v. Hays*, No. 03-08-00786-CV, 2010 WL 3190525, at *4 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.) (declining to extend *Mazuca* to determination of whether an attorney's drafting of a provision in a divorce decree constituted negligence). Similarly, in personal-injury cases, expert testimony on causation is not required when the evidence establishes a sequence of events

providing a strong, logically traceable connection between the triggering event and the plaintiff's resulting condition. *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007).

This case falls into the category of cases that do not require expert testimony on causation. The record here demonstrates: (1) the Stone Parties argued at trial and in a motion for new trial that the evidence was insufficient to prove agency; (2) the trial judge rejected the Stone Parties' arguments; and (3) the court of appeals reversed the Neubaums' case on the ground that the evidence was insufficient to prove agency. The trial judge's error is readily apparent from the face of the record. The facts establish a logical sequence of events connecting the trial judge's error and the Neubaums' resulting condition. Therefore, the Stone Parties were not required to present expert testimony to satisfy their summary-judgment burden.[3]

Judicial error was a new and independent cause absolving the Stone Parties of liability. Expert testimony on causation was not required because the judicial error was readily apparent on the face of the record. I dissent.


/s/    Marc W. Brown
       Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., majority)

---

[3] As a practical matter, it is hard to imagine who the Stone Parties could offer as an expert since it is not their burden to prove causation but rather the existence of a new and independent cause. The trial judge in the Usury Lawsuit could not testify. *See Alexander*, 146 S.W.3d at 119 ("[T]he decisionmaker here was the bankruptcy judge, who quite properly was not asked to, and did not, testify as to how he might have ruled if the case had been presented differently."). Nor could a sitting judge. *Joachim v. Chambers*, 815 S.W.2d 234, 239-40 (Tex. 1991) (malpractice case; sitting judge cannot testify regarding trial judge's error in underlying litigation). And, given that the trial judge's error is obvious from the record, what would an expert say?